1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   SHADY KNOLL ORCHARDS &
    DISTILLERY LLC, PETER                      NO. 1:23-CV-3093-TOR
8   WRIGHT, and CHRIS BAUM,
                                               ORDER DENYING DEFENDANT'S
9                        Plaintiffs,           MOTION TO DISMISS

10       v.

11  DAVID POSTMAN, Chairperson of
    the Washington Liquor and Cannabis
12  Commission,

13                       Defendants.

14       BEFORE THE COURT is Defendant's Motion to Dismiss Plaintiffs' First

15  Amended Complaint (ECF No. 9).  The matter was submitted for consideration

16  without oral argument.  The Court has reviewed the record and files herein and is

17  fully informed.  For the reasons discussed below, Defendant's motion to dismiss

18  (ECF No. 9) is **DENIED**.

19                            **BACKGROUND**

20       This motion to dismiss arises out of a 42 U.S.C. § 1983 challenge to

    ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1

Defendant Washington State's restrictions on the direct sale and shipment of liquor by out-of-state distilleries to Washington consumers. Plaintiff Shady Knoll Orchards and Distillery LLC is a small distillery operating out of Middlebrook, New York. ECF No. 8 at 3, ¶ 5. Like many modern businesses, Shady Knoll maintains a website which lists its products for purchase and ships those products directly to online consumers. *Id.* at ¶¶ 5-6. Plaintiffs Peter Wright and Chris Baum are Washington State consumers who enjoy Shady Knoll products. *Id.* at 5-6, ¶¶ 18-22.

Together, Plaintiffs argue that a viable market of consumers exist in Washington who would like to purchase Shady Knoll distilled beverages from its Internet storefront. *Id.* at 5-6, ¶¶ 18-22. However, Washington's regulatory scheme proscribes the direct sale of distilled products from out-of-state distillers to in-state consumers. *Id.* at 4, ¶ 8. Plaintiffs seek a declaratory judgment affirming that these laws unlawfully discriminate against interstate commerce in violation of the dormant Commerce Clause, and an injunction preventing Defendant from enforcing the same. *Id.* at 8-9, ¶¶ A-C. Defendant brings this instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 9.

## DISCUSSION

Defendant argues that Plaintiffs' lawsuit fails to state a claim upon which relief can be granted because Washington law, even if discriminatory, promotes a

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 2

legitimate state interest under the Twenty-first Amendment of the U.S.

Constitution.  *See* ECF No. 9 at 12-20.  Because Supreme Court precedent appears

to sanction Plaintiff's intended direct online sales, the Court respectfully disagrees

and retains the matter for further consideration.

Many states, including Washington, have historically regulated the sale of

alcohol through a "three-tier system" of manufacturers, distributors, and retailers.

Wash. Rev. Code (RCW) §§ 66.28.280, 66.28.285.  Under the three-tier system,

manufacturers sell to distributors; distributors sell to retailers; and retailers sell to

consumers.  *See Wash. Ass'n for Substance Abuse & Violence Prevention v. State*,

174 Wash.2d 642, 647-48 (2012); *see also* ECF No. 9 at 5 (explaining that the

system is designed to "creat[e] gaps between the various levels of distribution").

Distillers, of course, act as manufacturers of the spirits they produce.  ECF

No. 9 at 6.  However, Washington-based distillers may also "act as a retailer and/or

distributor" of their own products or of another Washington-based distillery.  RCW

§ 66.24.640.  A distillery operating as a retailer must abide by the same laws and

regulations as any other retailer, including maintaining a physical presence in

Washington.  RCW § 66.24.140(2)(a); ECF No. 9 at 14.  Distilleries with a

physical retail location may ship Internet orders directly to purchasing consumers.

RCW § 66.20.410.  Due to the physical presence requirement, out-of-state

distilleries may not make direct shipments to online Washington consumers.  ECF

1    No. 9 at 9-10.

2        The Commerce Clause authorizes Congress "[t]o regulate Commerce with

3    foreign nations, and among the several States, and with the Indian Tribes."  U.S.

4    CONST., art. I, § 8, cl. 3.  Under the Commerce Clause, Congress has the

5    affirmative power to regulate (1) the channels of interstate commerce; (2)

6    instrumentalities, goods, and persons in interstate commerce; and (3) activities that

7    substantially affect interstate commerce.  *See Gonzales v. Raich*, 545 U.S. 1, 16-17

8    (2005); *see also Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942) (Congress may

9    regulate purely local economic activity which "exerts a substantial effect on

10    interstate commerce.").  Over the years, the Supreme Court has "read[ ] between

11    the Constitution's lines" to give this constitutional provision even broader sweep

12    through its longstanding dormant Commerce Clause jurisprudence.  *Nat'l Pork*

13    *Producers Council v. Ross*, 598 U.S. 356, 368 (2023); *see also Comptroller of*

14    *Treasury of Maryland v. Wynne*, 575 U.S. 542, 549 (2015) (discussing the history

15    of the dormant Commerce Clause).  The dormant Commerce Clause limits the

16    power of states to adopt regulations which burden or discriminate against interstate

17    commerce for purposes of economic protectionism.  *West Lynn Creamery, Inc. v.*

18    *Healy*, 512 U.S. 186, 192 (1994); *see also Nat'l Pork Producers Council*, 598 U.S.

19    at 368 (the dormant Commerce Clause "'contains a further, negative command[ ]'

20    . . . effectively forbidding the enforcement of 'certain state economic regulations

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4

even when Congress has failed to legislate on the subject.'") (quoting *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995) (internal brackets omitted)).  *But see New York v. United States*, 505 U.S. 144, 171 (1992) (states may burden interstate commerce with prior congressional authorization); *White v. Massachusetts Council of Constr. Emps., Inc.*, 460 U.S. 204, 208 (1983) ("[W]hen a state or local government enters the market as a participant it is not subject to the restraints of the Commerce Clause.").

A state law which facially discriminates against interstate commerce is *per se* invalid.  *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331 (1996).  Courts will strike down discriminatory regulations as illegally protectionist where they are "'designed to benefit in-state economic interests by burdening out-of-state competitors.'"  *Nat'l Pork Producers Council*, 598 U.S. at 369 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-338 (2008)).  Nevertheless, a presumptively invalid discriminatory law may survive if the State "demonstrate[s] both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means," or with the usual exceptions of congressional authorization or market participation.  *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (internal quotations omitted); *see also id.* at 151 (states "retain[ ] broad regulatory authority to protect the health and safety of [their] citizens and the integrity of [their] natural resources.").

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5

Although Defendant does not concede the issue, it is difficult to understand the web of regulations permitting Washington distilleries to retail their products directly to online consumers while preventing out-of-state distilleries from doing the same as anything but facially discriminatory. Still, Defendant jockeys for this Court to dismiss Plaintiff's case, insisting that "the Supreme Court has recognized a vast array of legitimate areas of concern under the Twenty-first Amendment" outside of economic protectionism, including "a state's interest in preserving its three-tier system." ECF No. 9 at 13. Defendant further maintains that the Fourth, Sixth, and Eighth Circuit Courts of Appeals have found that "[s]tate physical presence requirements are considered essential features of the three-tier system." *Id.* at 2, 13 (italics omitted).

Given the posture the case is in, the Court is skeptical of Defendant's claim that the Twenty-first Amendment compels dismissal. *See* FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (To survive dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the Twenty-first Amendment, "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST. amend. XXI, § 2. Although this language by its plain

terms appears to give States unchecked authority to ban the flow of alcohol into their borders, the Supreme Court has "concluded that § 2 does not confer limitless authority to regulate the alcohol trade." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. ----, 139 S. Ct. 2449, 2474 (2019).

In *Granholm v. Heald*, the Court considered a challenge to a regulatory scheme not unlike the one here. 544 U.S. 460, 472 (2005). There, producers and consumers challenged Michigan and New York's restrictions on out-of-state shipments of wine. *Id.* at 465-66. Both states, which had adopted a three-tier structure similar to Washington's, permitted direct shipments from in-state wine producers to in-state consumers, but restricted out-of-state wineries from making similar direct shipments. *Id.* at 469-70. Michigan banned out-of-state direct shipments altogether, whereas New York required out-of-state wineries to establish an in-state distribution operation before they could directly ship to in-state consumers. *Id.* at 473-74.

The *Granholm* Court had little trouble concluding that Michigan's total ban as well as New York's physical presence requirement discriminated against interstate commerce. *Id.* at 475 ("New York's in-state presence requirement runs contrary to our admonition that States cannot require an out-of-state firm 'to become a resident in order to compete on equal terms.'") (quoting *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 72 (1963)). The States urged that the

laws were permissible despite their discriminatory character because they

advanced the legitimate purposes of keeping minors from obtaining alcohol and

facilitating tax collection.  *Id.* at 490.  The Court rebuffed those rationalizations,

concluding the Commerce Clause "demand[s] more than mere speculation to

support discrimination against out-of-state goods . . . Michigan and New York

have not satisfied this exacting standard."  *Id.* at 492-93.

More recently, in *Tennessee Wine & Spirits Retailers Ass'n*, the Court

accepted a challenge to Tennessee's two-year durational residency requirement for

corporations seeking to sell alcoholic beverages to in-state consumers.  139 S. Ct.

2449.  In striking down the law as violative of the dormant Commerce Clause, the

Court closely examined the history of the Twenty-first Amendment and the

Commerce Clause, explaining:

> Recognizing that § 2 was adopted to give each State the authority to address alcohol-related public health and safety issues in accordance with the preferences of its citizens, we ask whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground.  Section 2 gives the States regulatory authority that they would not otherwise enjoy, but as we pointed out in *Granholm*, "mere speculation" or "unsupported assertions" are insufficient to sustain a law that would otherwise violate the Commerce Clause.  Where the predominant effect of a law is protectionism, not the protection of public health or safety, it is not shielded by § 2.

*Id.* at 2474 (internal citation omitted).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 8

Defendant quotes *Granholm* for the proposition that "the three-tier system itself is 'unquestionably legitimate'" and argues that Plaintiff's challenge represents a threat to Washington's three-tier system "by allowing out-of-state distillers to bypass Washington's regulated market." 544 U.S. at 489 (internal citation and quotation omitted); ECF No. 9 at 15-17; *see also* ECF No. 11 at 4. But as in Michigan, New York, and Tennessee, the legitimacy of Washington's three-tier system is not put in issue by a scheme which allows in-state distributors to eschew the standard three-tier scheme requirements and sell directly to consumers while denying out-of-state distributors the same privilege. At this juncture, in light of the foregoing Supreme Court precedent on similar state bans, Defendant's proffered rationalizations do not appear to support Washington's discrimination against out-of-state distributors.

Turning from Supreme Court precedent, Defendant invites the Court to dismiss the case on the basis that, since *Granholm* and *Tennessee Wine* were decided, other courts of appeals—namely, the Fourth, Sixth, and Eighth Circuits—have apparently allowed the creation of three-tier systems "with limited exceptions . . . in which [distributors] can play multiple roles," including state physical presence for direct sales. ECF Nos. 9 at 18; 11 at 4. However, Plaintiff retorts that courts in the First, Seventh, and Eleventh Circuits have reached the opposite conclusions. ECF No. 10 at 4-5. Plaintiff also represents that the Ninth Circuit has

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 9

1 │ not squarely confronted these issues.  ECF No. 10 at 5-6.

2 │     Even accepting Defendant's claims that some post-*Granholm* authority

3 │ exists which would support a discriminatory in-state physical presence

4 │ requirement, the existence of a circuit split compels the Court to stay its hand.  At

5 │ this stage, Defendant has not shown that Plaintiff's allegations, if proven true, fail

6 │ to state a plausible claim to relief.  FED. R. CIV. P. 12(b)(6).  As such, the Court

7 │ denies Defendant's motion to dismiss at this time.

8 │ **ACCORDINGLY, IT IS HEREBY ORDERED:**

9 │     Defendant's Motion to Dismiss (ECF No. 9) is **DENIED**.

10 │     The District Court Executive is directed to enter this Order and furnish

11 │ copies to counsel.

12 │     DATED October 24, 2023.



           THOMAS O. RICE
        United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 10